IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT JACKSON
Assigned on Briefs March 7, 2006

## STATE OF TENNESSEE v. KEVIN YOUNG

**Direct Appeal from the Criminal Court for Shelby County**
**No. 04-01050     James C. Beasley, Judge**

---

**No. W2005-01180-CCA-R3-CD  - Filed April 26, 2006**

---

The defendant, Kevin Young, was convicted of one count of possession of more than one-half ounce of marijuana with intent to sell and one count of possession of more than one-half ounce of marijuana with intent to deliver. See Tenn. Code Ann. § 39-17-417(a) (2003). The trial court merged the two counts into a single conviction and sentenced the defendant, a career offender, to six years in the Department of Correction. In this appeal, the defendant asserts (1) that the evidence is insufficient to support the convictions and (2) that the trial court provided an incorrect supplemental instruction to the jury. The judgment of the trial court is affirmed.

**Tenn. R. App. P. 3; Judgment of the Trial Court Affirmed**

GARY R. WADE, P.J., delivered the opinion of the court, in which JOSEPH M. TIPTON and NORMA MCGEE OGLE, JJ., joined.

Handel Durham, Memphis, Tennessee, for the appellant, Kevin Young.

Paul G. Summers, Attorney General & Reporter; David H. Findley, Assistant Attorney General; William L. Gibbons, District Attorney General; and Pamela Fleming and Theresa McCusker, Assistant District Attorneys General, for the appellee, State of Tennessee.

**OPINION**

On September 12, 2003, plain clothes officers of the Memphis Police Department observed what they believed to be hand-to-hand drug transactions between the defendant and several individuals at 535 Lucy Street, a residence in Memphis. After officers learned that one of the individuals who had just left the premises was found to be in possession of marijuana, they went to the residence, obtained consent to search the inside, and discovered a brown paper bag containing individually wrapped packages of marijuana. When officers learned that the defendant occupied the room of the house where the marijuana was found, he was placed under arrest.

At trial, Officer Greg Newberry of the Memphis Police Department testified that on the day of the arrest, he was "riding plain clothes" to investigate complaints of drug activity at 535 and 621 Lucy Street. He stated that he and his partner, Officer Lawrence, set up surveillance of the two residences and that shortly thereafter, he observed significant foot and vehicle traffic at 535 Lucy. According to Officer Newberry, who was using binoculars, he saw several individuals walk to the front door, give the defendant money in exchange for "something," and then leave. He also observed some of the vehicles park briefly in front of the residence, whereupon the defendant would walk out of the residence in order to make a similar exchange. Officer Newberry testified that after monitoring this activity for approximately thirty minutes, he instructed officers in a marked patrol car to follow a green SUV that had been involved in one of the transactions. A few minutes later, he received a cellular telephone call from an officer who reported that the green SUV had been stopped for a traffic violation and that marijuana was found in the console of the vehicle.

Officer Newberry testified that he then called for backup and that the assisting officers approached the residence, detaining the defendant and three or four other black males. According to Officer Newberry, Reginald Chambers, who claimed to be "in charge of" the residence, consented to a search. The police then discovered a brown paper bag containing several individually wrapped plastic bags of marijuana on a sofa in the front room of the house. Officer Newberry recalled that the bag contained approximately twenty "nickel bags," bags of marijuana which sell for $5. He testified that when Mr. Chambers informed officers that the defendant "stayed" in the front room, the defendant was placed under arrest and a large amount of currency was found in his pocket.

During cross-examination, Officer Newberry conceded that the defendant did not have any drugs in his possession at the time of his arrest. He also admitted that although he saw the defendant provide "something" in exchange for money, he could not say with certainty that the "something" was marijuana. He acknowledged that the plastic bags taken from the front room were not tested for fingerprints.

Officer Myron Lawrence, who was also working plain clothes detail on the day of the offense, corroborated Officer Newberry's account, testifying that the defendant had $856 in his pants pocket. According to Officer Lawrence, the currency included two $100 bills, ten $20 bills, eight $10 bills, fifty-two $5 bills, and fifty-six $1 bills. The officer stated that a field test of the green, leafy substance found inside the brown paper bag indicated positive for marijuana.

Officer Eric Carlisle, who was working as a uniformed patrol officer on the day of the offense, was asked to follow the green SUV. Officer Carlisle testified that when the vehicle made a sudden stop, he activated his blue lights, approached the driver, Nathaniel Brooks, and, after learning that his driver's licence had been revoked, placed him under arrest. Officer Carlisle, who performed an inventory search of the vehicle before it was towed, found a bag of marijuana between the driver's seat and the console.

Officer Tamika Johnson, who responded to Officer Newberry's call for backup, testified that when she arrived at the scene, she observed "two males apparently talking or something where they

made some kind of transaction. One actually had money in his hand and the other [she] couldn't tell." According to the officer, all of the individuals at the residence were detained and permission was given by Reginald Chalmers, who "had control of the premises," to search the interior. She recalled that Chalmers and two women inside informed the officers that the defendant "frequented that room up front."

Officer Johnson's partner, Officer Raymond Jenkins, testified that when he arrived on the scene, he observed the defendant and several other black males standing near a white car. Officer Jenkins stated that the individuals were detained while officers located the owner of the residence. He recalled that a black male, who claimed that he was "in charge of the house," gave permission to search. Officer Jenkins testified that the other occupants of the house indicated that the defendant used the front room of the house, which smelled strongly of marijuana.

Agent Tara Barker, a forensic scientist with the Tennessee Bureau of Investigation, confirmed that she weighed the green, leafy substance provided to her by the Memphis Police Department and that the substance weighed 79.9 grams. Testing established that the substance was marijuana.

I

In this appeal, the defendant first asserts that the evidence is insufficient to support his convictions. On appeal, of course, the state is entitled to the strongest legitimate view of the evidence and all reasonable inferences which might be drawn therefrom. State v. Cabbage, 571 S.W.2d 832, 835 (Tenn. 1978). The credibility of the witnesses, the weight to be given their testimony, and the reconciliation of conflicts in the proof are matters entrusted to the jury as the trier of fact. Byrge v. State, 575 S.W.2d 292, 295 (Tenn. Crim. App. 1978). When the sufficiency of the evidence is challenged, the relevant question is whether, after reviewing the evidence in the light most favorable to the state, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. Tenn. R. App. P. 13(e); State v. Williams, 657 S.W.2d 405, 410 (Tenn. 1983). Questions concerning the credibility of the witnesses, the weight and value of the evidence, as well as all factual issues raised by the evidence are resolved by the trier of fact. Liakas v. State, 286 S.W.2d 856, 859 (Tenn. 1956). Because a verdict of guilt against a defendant removes the presumption of innocence and raises a presumption of guilt, the convicted criminal defendant bears the burden of showing that the evidence was legally insufficient to sustain a guilty verdict. State v. Evans, 838 S.W.2d 185, 191 (Tenn. 1992).

Where, as here, the evidence is entirely circumstantial, the jury must find that the proof is not only consistent with the guilt of the accused but inconsistent with his innocence. There must be an evidentiary basis upon which the jury can exclude every other reasonable theory or hypothesis except that of guilt. Pruitt v. State, 460 S.W.2d 385, 390 (Tenn. Crim. App. 1970). The trial court has the duty to charge the jury on the weight and significance of circumstantial evidence when it is the only basis upon which the state's case rests. Bishop v. State, 287 S.W.2d 49, 52 (Tenn. 1956). Like all other fact questions, the determination of whether all reasonable theories or hypotheses are excluded by the evidence is a jury question. State v. Tharpe, 726 S.W.2d 896, 900 (Tenn. 1987); see Marable v. State, 313 S.W.2d 451, 457 (Tenn. 1958).

The jury is governed by four rules when testing the value of circumstantial evidence: (1) the evidence should be acted upon with caution; (2) all of the essential facts must be consistent with the hypothesis of guilt; (3) the facts must exclude every other reasonable theory except that of guilt; and (4) the facts must establish such a certainty of guilt as to convince beyond a reasonable doubt that the defendant is the perpetrator of the crime. Marable, 313 S.W.2d at 456.

Tennessee Code Annotated section 39-17-417 provides that "[i]t is an offense for a defendant to knowingly . . . [p]ossess a controlled substance with intent to manufacture, deliver or sell such controlled substance." Tenn. Code Ann. § 39-17-417(a). Possession may be actual or constructive. "Actual possession exists when a tangible object is in the immediate possession or control of the party." United States v. Craven, 478 F.2d 1329, 1333 (6th Cir. 1973). "Constructive possession exists when a person does not have actual possession but instead knowingly has the power and the intention at a given time to exercise dominion and control over an object, either directly or through others." Id. Possession may also be sole or joint. "[T]hus, more than one person can be considered in possession of the same drugs." State v. Clyde Randall Scivally, No. M2001-02261-CCA-R3-CD, slip op. at 3 (Tenn. Crim. App., at Nashville, July 15, 2002) (citing State v. Copeland, 677 S.W.2d 471, 476 (Tenn. Crim. App. 1984)).

Here, the evidence established that the defendant made hand-to-hand exchanges with several individuals from the front room of the residence at 535 Lucy Street. While state witnesses were unable to identify the nature of the substance in the defendant's hand during the transactions, Officer Newberry saw the other individuals involved transfer money to the defendant. After one of these exchanges, Officer Carlisle stopped a green SUV which had just left the residence and discovered a bag of marijuana in the console. Chalmers, who was "in charge of" the residence, informed the officers that the defendant "stayed" in the front room, where officers found a brown paper bag containing individually wrapped packages of marijuana. The individual packages were what is commonly referred to on the street as "nickel bags," bags of marijuana which sell for $5. At the time of his arrest, the defendant had $856 in cash in his pocket, including two $100 bills, ten $20 bills, eight $10 bills, fifty-two $5 bills, and fifty-six $1 bills. The officers identified the defendant as the only individual inside the residence who had participated in the various transactions that took place during the period of surveillance. Under these circumstances, it is our view that the circumstantial evidence was sufficient to support the convictions.

II.

The defendant next contends that the trial court erred by providing an incorrect supplemental instruction to the jury. The state submits that the defendant has waived this issue by failing to lodge a contemporaneous objection and by failing to present the issue in the motion for new trial.

The record establishes that during its deliberations, the jury sent the following question to the trial court:

Can we consider as evidence a quotation in the record of arrest by Nathaniel
Brooks who told Officer Blake and Carlisle that he bought his marijuana from [the

defendant]? We have instructions that exhibits admitted into evidence can be considered.

The trial judge then informed both the state and the defense that it intended to answer the question as follows:

> Members of the jury, you are allowed to consider all testimony and all exhibits which were introduced. The weight or value you want to give to any testimony or exhibit is a question for you, the jury, to determine.

After considering the issue, the trial judge commented that he wanted to be careful not to comment on the evidence or place particular emphasis on a particular piece of evidence. While the defendant initially expressed concern about the prejudicial nature of the evidence being discussed, he did not challenge the supplemental instruction, stating "I guess that's basically all you can do." The trial judge then sent his answer in writing to the jury.

As the state correctly points out, the defendant failed to lodge an objection to the supplemental instruction and, in fact, indicated his satisfaction with it. Moreover, the defendant failed to raise the issue in his motion for new trial. "[I]n all cases tried by a jury, no issue presented for review shall be predicated upon error in the admission or exclusion of evidence, jury instructions granted or refused, . . . or other ground upon which a new trial is sought, unless the same was specifically stated in a motion for a new trial; otherwise such issues will be treated as waived." Tenn. R. App. P. 3(e); see State v. Martin, 940 S.W.2d 567, 569 (Tenn. 1997) (holding that a defendant relinquishes the right to argue on appeal any issues that should have been presented in a motion for new trial); State v. Dodson, 780 S.W.2d 778, 780 (Tenn. Crim. App. 1989). In addition, appellate relief is generally not available when a party has "failed to take whatever action was reasonably available to prevent or nullify the harmful effect of any error." Tenn. R. App. P. 36(a) ("Nothing in this rule shall be construed as requiring relief be granted to a party responsible for an error or who failed to take whatever action was reasonably available to prevent or nullify the harmful effect of an error."); see State v. Killebrew, 760 S.W.2d 228, 235 (Tenn. Crim. App. 1988) (waiver applies when the defendant fails to make a contemporaneous objection); see also State v. Jenkins, 733 S.W.2d 528, 532 (Tenn. Crim. App. 1987); State v. Rhoden, 739 S.W.2d 6, 11-12, 18 (Tenn. Crim. App. 1987). Whether properly assigned or not, however, this court may consider plain error upon the record under Rule 52(b) of the Tennessee Rules of Criminal Procedure. State v. Ogle, 666 S.W.2d 58, 60 (Tenn. 1984).

Before an error may be so recognized, it must be "plain" and must affect a "substantial right" of the accused. The word "plain" is synonymous with "clear" or equivalently "obvious." United States v. Olano, 507 U.S. 725, 732 (1993). Plain error is not merely error that is conspicuous, but especially egregious error that strikes at the fairness, integrity, or public reputation of judicial proceedings. See State v. Wooden, 658 S.W.2d 553, 559 (Tenn. Crim. App. 1983). In State v. Adkisson, 899 S.W.2d 626, 639 (Tenn. Crim. App. 1994), this court defined "substantial right" as a right of "fundamental proportions in the indictment process, a right to the proof of every element

of the offense and . . . constitutional in nature." In that case, this court established five factors to be applied in determining whether an error is plain:

> (a) the record must clearly establish what occurred in the trial court;
> (b) a clear and unequivocal rule of law must have been breached;
> (c) a substantial right of the accused must have been adversely affected;
> (d) the accused [must not have waived] the issue for tactical reasons; and
> (e) consideration of the error must be "necessary to do substantial justice."

Id. at 641-42 (footnotes omitted). Our supreme court characterized the Adkisson test as a "clear and meaningful standard" and emphasized that each of the five factors must be present before an error qualifies as plain error. State v. Smith, 24 S.W.3d 274, 282-83 (Tenn. 2000).

Under the United States and Tennessee Constitutions, a defendant has a constitutional right to trial by jury. U.S. Const. amend VI; Tenn. Const. art. 1, § 6; see State v. Bobo, 814 S.W.2d 353, 356 (Tenn. 1991); Willard v. State, 130 S.W.2d 99, 100 (Tenn. 1939). This right encompasses the defendant's right to a correct and complete charge of the law. State v. Teel, 793 S.W.2d 236, 249 (Tenn. 1990). In consequence, the trial court has a duty "to give a complete charge of the law applicable to the facts of a case." State v. Harbison, 704 S.W.2d 314, 319 (Tenn. 1986); see Teel, 793 S.W.2d at 249; see also Tenn. R. Crim. P. 30. Jury instructions must, however, be reviewed in the context of the overall charge rather than in isolation. See Sandstrom v. Montana, 442 U.S. 510, 519 (1979); see also State v. Phipps, 883 S.W.2d 138, 142 (Tenn. Crim. App. 1994). A charge is prejudicial error "if it fails to fairly submit the legal issues or if it misleads the jury as to the applicable law." State v. Hodges, 944 S.W.2d 346, 352 (Tenn. 1997).

Trial courts may provide supplemental instructions in response to jury questions. State v. Forbes, 918 S.W.2d 431, 451 (Tenn. Crim. App. 1995). While the better procedure is to admonish the jury not to place undue emphasis on the supplemental instruction and to consider it in conjunction with the entire charge, it is not necessarily reversible error to fail to do so. State v. Chance, 778 S.W.2d 457, 461-62 (Tenn. Crim. App. 1989).

In this case, the trial court instructed the jury that it could consider all testimony and exhibits that were introduced during the trial. That was a correct statement of the law. See Tenn. Const. art. 1, § 19 (stating that in criminal cases, "the jury shall have a right to determine the law and the facts"); Wright v. State, 394 S.W.2d 883, 885 (Tenn. 1965); see also Tenn. R. Crim. P. 30.1 ("[T]he jury shall take to the jury room all exhibits and writings which have been received in evidence . . . for their examination during deliberations, unless the court for good cause, determines that an exhibit should not be taken into the jury room."). The defendant claims, however, that the specific statement contained in exhibit two was hearsay and was admitted only for the limited purpose of establishing that there was probable cause to arrest the defendant. It is our view that the record does not support this assertion.

The defendant's arrest citation was admitted during the testimony of Officer Lawrence. The record establishes that when the state sought to have the document placed into evidence, the trial court asked the defendant if he had any objections to its admission and defense counsel responded, "I'm not objecting, I'm just asking what's the purpose of it being admitted if he's testified to it?" The trial court responded, "I have no idea . . . . I'm just asking if you have an objection to it being marked . . . as an exhibit." At that point, defense counsel stated, "I have no objections, Judge." The portion of the document containing the statement of Nathaniel Brooks to Officer Carlisle that he purchased marijuana from the defendant could have been excluded as inadmissible, testimonial hearsay, see Crawford v. Washington, 541 U.S. 36, 52, 61-62 (2004). The defendant did not lodge a hearsay objection to the document. See State v. Maclin, 183 S.W.3d 335, 351 (Tenn. 2006) (holding that a Crawford analysis is necessary only when "a defendant raises a Confrontation Clause objection"). Moreover, neither the state nor the defendant suggested that the document be admitted for a limited purpose. Thus, the jury was permitted to consider the evidence for its "'natural probative effects as if it were in law admissible.'" State v. Smith, 24 S.W.3d 274, 280 (Tenn. 2000) (quoting State v. Harrington, 627 S.W.2d 345, 348 (Tenn. 1981)). Under these circumstances, it is our view that the trial court's supplemental instruction was not erroneous.

Because it is our view that the trial court did not err by providing the supplemental instruction, the instruction could not qualify as plain error. See Adkisson, 899 S.W.2d 641-42. In consequence, the defendant is not entitled to relief on this issue.

Accordingly, the judgment of the trial court is affirmed.

_____
GARY R. WADE, PRESIDING JUDGE